Good morning, everyone. Welcome to the Eleventh Circuit. This, as I have told your predecessors on Tuesday and Wednesday, is my first time to preside, so I'm hopefully getting a little bit better as the days go by. The first thing that Judge Anderson and I would like to do is to provide an abbreviated welcome to our newest colleague, Judge Branch. We welcomed her formally on Tuesday, but are just thrilled to have her with us. She is a superstar, and we're excited about a very long tenure of hers on this Court, so welcome, Judge Branch. The second thing I'll do very briefly is just to give you a couple of ground rules. Please assume that we've read your briefs very carefully. We've read the underlying cases. We've read the pertinent portions of the record, so no need, as you stand up, to recap facts or procedural history. Just get right to the issue. You have limited time before us, and we want you to make the best use of it. Second, as to the traffic light timing system, green-yellow-red, you understand it intuitively. When the red light goes off, there's no need for you to stop mid-syllable. Just begin to bring your presentation to a close, and if you, you know, see us begin to wave our hands, you'll know that it's time to sit down. So the first case this morning is Bellamy v. the Commissioner of Social Security, number 17-12664. We have Mr. Steinberg for the appellant, Mr. Wilson for the appellee. Mr. Steinberg, at your leisure. Okay, thank you. May it please the Court, Mr. Wilson? This is a case that, or this is a situation that keeps reoccurring, and basically, years ago, there was cases where a vocational expert would testify that a hypothetical claimant could perform certain jobs, and the jobs were, the characteristics of the jobs were not consistent with information contained in a government publication, the Dictionary of Occupational Titles, and the selected characteristics of occupations. So circuits around the country made different rulings on how to address that situation. Some circuits say the Dictionary of Occupational Titles takes precedent, others would say the vocational expert testimony takes precedence. In this circuit, in the Jones case, they said that the testimony of the vocational expert trumps the Dictionary of Occupational Titles. Subsequently, Social Security made a ruling, 004P, which says that in this situation, the judge will ask the vocational expert if his testimony is consistent with the information contained in the Dictionary of Occupational Titles and the selected characteristics of occupations. If the vocational expert says it does, then explain the disparity, and then the judge will analyze the situation and decide which he'll go with. In this circuit, there was follow-up cases that said despite the ruling, Jones still applies, and the testimony of the vocational expert still trumps the information contained in the Dictionary of Occupational Titles. So can I ask you a question? What is, in your view, is the correctness of that proposition of law, that despite the ruling, Jones continues to apply as prior panel precedent? Does the ruling, can the ruling, I suppose, reverse Jones, or do we have to do something about it at the bank? There's a problem. It has to be done in bank. The problem is in other cases, they said that rulings are not binding on the courts. It doesn't have the force and effect of law. But the cases that talk about that aren't the same as this ruling because the Social The rulings are now part of the regulations because the regulations say we are bound by those rulings. So I do believe that the decisions were wrong, that 004P is binding on the court. It is, it has the effect of law even though it's a ruling because it's incorporated by the regulations. Now, let me ask you this. So just, if that's right, if it has the effect of law, if it has the force and effect of law, then would we need to go in bank or is it just as a matter of law, it has reversed, superseded, overturned Jones? No. The court has said, the other decisions, non-published decisions have said that we're not bound by the ruling. I think that's an incorrect finding and it misinterprets the agencies because in those cases they weren't dealing with a situation where regulations say that the agency is bound by their own rulings. Now that being said, let's even assume that ruling is applicable. The different circuits have different ways of interpreting 004P. There's a Seventh Circuit case that it says that as long as the judge asks the vocational expert if his testimony is consistent and he says yes, unless there's an obvious discrepancy, that's all he has to do. Other circuits, I Circuit, the Eighth Circuit, the Ninth Circuit, and the Tenth Circuit, say the judge does have a duty to develop the record and even if the vocational expert says my testimony is consistent, if it's an apparent inconsistency, which we're alleging in this case, the judge has to do more than just ask the question. He has to look at the Dictionary of Occupational The judge had limited the claimant to moderate noise and one of the jobs was involved loud noise. So there was an apparent and obvious disparity that wasn't picked up at the hearing. There was another limitation to limited depth perception and then the selected characteristics of occupation said frequent depth perception. So you have an apparent disparity. The attorney didn't object at the hearing because he didn't know there was an apparent disparity. You have this huge Dictionary of Occupational Titles and you can't have somebody, there's no way you could know what the vocational expert is going to say until he says it. But after the hearing, someone can go back and look at it and say, okay, yeah, there was a disparity. So in... And let me ask you a question about that. There were three positions, the packager position, the marker and the assembler positions. And so even if we can see that there was conflict with the packager position, are you saying there's also a conflict with regard to the other two positions as well? Yes. Now, the... Let me go to the... The small parts assembler job is constant depth perception. And in the hypothetical, the judge said limited depth perception. The job we have a problem with is marker. The judge limited visual acuity to 12-point print. And the job of a marker requires frequent near acuity. Now, I don't know what that means, you know, whether, you know, frequent near acuity is like 20 inches from your face, like, you know, looking at a computer or reading as opposed to, like, I'm looking at you. That doesn't require frequent near acuity, but reading does. Well, so where is the conflict between the clarity of vision at 20 inches or less and 12-point font? Where is the conflict? I don't know if there's a conflict. That was why the other argument was that the hypothetical was a little vague. Not a little vague, but was vague because the judge did not ask the vocational expert, well, this has frequent near acuity. Is that inconsistent with what I just said, the 12-point print? So we... In fact, if there is no conflict with respect to the marker position, then there is substantial evidence to support the ALJ's decision, wholly aside from the Jones issue with respect to the ruling. Is that not true? Assuming that the marker position alone would be enough. Why wouldn't it be enough? There were a lot of jobs that the VEE said were available in the marker position. I would agree with you. But the other argument was that the hypothetical to the vocational expert wasn't clear enough so that... But if you lost on that argument and also we held that there was no conflict with respect to the marker position, then we wouldn't have to reach the Jones issue. Is that not true? Yes. So you agree, as we're sitting here today, that the absence of a conflict with respect to marker, setting aside the hypothetical issue, the absence of a conflict with respect to marker, one of the three, is sufficient? If there was no conflict, I do posit that there was a conflict because the marker job required frequent near acuity, and that appears to be in conflict with the finding in the decision that suggested that the claimant had limitations with near acuity. But when saying 12-point print, I'm not sure whether that's clear enough to the vocational expert. I mean, you know, it seems like they should have asked the vocational expert, you know, the job requires frequent near acuity. Is that consistent with the hypothetical that I gave you? But the judge did ask, is there any conflict? And the vocational expert said no. Yes. So why does that answer not kind of carry the day on what you're talking about now, questioning whether there is a conflict? Oh, because he also asked them, is there a conflict? He said no. And, you know, on the depth perception, which he was wrong, and on the noise level, which he was wrong. So the vocational expert gave incorrect testimony, obvious and apparent incorrect testimony on the other two jobs. So we're not so sure that if you brought it to his attention and said this job requires frequent near acuity, is that still consistent with, is your testimony still consistent with the Dictionary of Occupational Titles? He might have said, well, you know, I didn't realize it was frequent near acuity. Just like I didn't realize that the depth perception was constant and the noise level was loud, I changed my opinion. Or he could say, yeah, I know what the Dictionary of Occupational Titles says, but I disagree with it. I think it's different. But, you know, it's not really clear that the vocational expert was knowledgeable about whether his testimony was consistent because it wasn't. Thank you very much, Mr. Wilson. May it please the Court. The only real issue this Court needs to consider is who has the burden of proof. I think Klayman is trying to shift his burden of proof at Step 5 from himself to the Administrative Law Judge, or ALJ. But the law and the Commissioner's policies don't support that argument. The Commissioner asked this Court to affirm, and in doing so, I'm going to cover three points. The first is that the ALJ complied with Social Security Ruling, or SSR 004P. The second is that Klayman has failed to show an apparent conflict to this Court, and more importantly, failed to show an apparent conflict on the record. And the third is that this Court's holding in Jones is not necessarily implicated here, but even if it were, the facts of this case do not give this Court a reason to retreat from its holding in Jones. Can I ask your indulgence, I guess, especially in light of Judge Anderson's questions? Would you mind starting with point number two, whether there's a conflict here at all? Sure. So, Klayman has failed to show an apparent conflict to this Court. The first, I'm going to address two jobs. That's going to be the assembler job and the marker job. So you acknowledge that there is a conflict with respect to the The Commissioner is not actually conceding that. The V.E. testified that there was no conflict. The V.E. is a vocational expert, and that testimony is unchallenged, and Klayman had the burden of proof at step five, and developed no contrary evidence to the V.E.'s testimony. I think your brief does concede it, doesn't it? The brief points out that maybe facially, there could be a conflict, but the important point is that Klayman hasn't actually developed that conflict on the record. So to the extent there's any ambiguity, the Court has to resolve that against Klayman, who had the burden of proof at step five. Turning to the assembler job, it requires constant depth perception. Constant is a term of art. It is a term of frequency, and the ALJ here did not find that there was a frequency limitation in the Klayman's depth perception. He instead said that the Klayman couldn't accurately judge distance or speed. So if the assembler job were sort of like I Love Lucy with the fast-moving line, and the Klayman had to pick things off of it, that might be too hard for our Klayman. But the Dictionary of Occupational Titles, the way it describes this job, is that the assembler puts pieces together, and it sounds like it may be done at a workstation. Again, to the extent there's any ambiguity about that, the Court has to resolve that ambiguity against the Klayman, because he has the burden of proving he couldn't do that job. The assembler job also requires constant reaching and handling. The ALJ here found that the Klayman could not handle more frequently with his left hand due to a left-hand issue. His right hand is completely okay though, is that right? Correct. There's no record evidence indicating that his right hand is impaired. And the Dictionary of Occupational Titles for the assembler job doesn't say that constant reaching and handling is required with both hands. That's significant because where the DOT is silent under persuasive holdings from this Court, the VE's testimony controls. And perhaps more importantly, Klayman hasn't identified any particular duty of the assembler job that he's unable to do with the limitations in his left hand. So again, he's failed to meet his burden of proof on that issue. The marker job, it requires frequent near-visual acuity. Again, frequent is a term of art. It's a term of frequency. And the ALJ did not limit the frequency of the Klayman's near-visual acuity. They just found that he couldn't read smaller than 12-point font. Again, the DOT doesn't say what size font is involved that needs to be read in this job. So the VE's claimant has not identified any particular job duty that he is unable to do because of his limitations in reading a certain point size of font. So in sum, Klayman has failed to show an apparent conflict to this Court. But more importantly, the persuasive holdings of this Court are that whereas here a claimant fails to question the vocational expert, he needed to show an error on the record that needed to be resolved. But he's failed to do so. And how, just picking up on your adversary's point, how just in the real world does that happen? He says, you know, look, there's this giant dictionary. The guy gets questioned. How is he supposed to know? How do you do it on the fly? And I guess he suggested that you might come back after the fact and sort of paper the record. Is that how it happens? There actually could be a number of ways this could happen. So an apparent conflict could come up when the ALJ asks, is your testimony inconsistent? The vocational expert could say, yes, it is inconsistent. And then the ALJ has to seek a reasonable explanation. Claimant's counsel could also cross-examine the vocational expert about the requirements of the job at the hearing. Claimant's counsel could ask the ALJ to hold the record open after the hearing so that he could get vocational evidence and submit it. Under the Commissioner's regulations, there is another step after the ALJ's hearing in the administrative review process, and claimant can submit additional evidence there at the appeals counsel level. So there are several points where the claimant could submit additional evidence and develop the record about this issue, but claimant failed to do so here. So it's not the case that he'd have to be sitting there with this giant dictionary, and as the guy testifies, he's got to be thumbing through the dictionary and be ready on the fly to sort of confront the guy with the conflict. He can do it after the fact. Correct. Correct. He could do it after the fact, or he could go through the vocation. That could be the basis of a waiver holding. He had the opportunity in the appeal, administrative appeal, to deduce additional evidence and did not. Do we have cases that suggest a waiver in situations like that? I would urge the court to frame it as a failure to meet the burden of proof rather than a waiver. The Supreme Court's holding in Sims v. Apfel said that there is no sort of issue exhaustion requirement. Now, they were speaking specifically at the appeals counsel level, left open the question of what happens at the ALJ level, but because that issue's out there, I think the cleaner decision is just to frame it as a burden of proof issue. It, the burden of proof bothered me a little bit because that ruling seems to kind of shift the burden of proof onto the, an affirmative duty of the ALJ. Does it not? It does not, actually. The ruling itself makes clear that the ALJ has to ask questions as part of the duty to develop, which is different than the burden of proof. The duty to develop at step five, courts have said, you know, the ALJ needs to produce jobs, and then the claimant has the burden of producing evidence that he cannot do those jobs. I would liken it to maybe McDonnell Douglas, where the employer has the burden of production, of showing legitimate nondiscriminatory reasons, but the claimant still bears the burden of persuasion. In SSA speak, it's a little bit different. The ALJ has a duty to develop in that he has to ask about potential inconsistencies, but at the end of the day, it's still up to the claimant and his counsel to show that he cannot do the jobs the vocational expert identified. Now, can I ask you one quick question? So it seems to me as among the three jobs, your strongest arguments as to no conflict in order would be Marker, Assembler, Packer. If we were to conclude that there is no conflict with respect to Marker, is that sort of game over? No where there are sufficient jobs out there, that finding has been made on the record. Is that good enough even if there are conflicts or might be conflicts with respect to two and three? I would respectfully submit that based on this record, there's been no conflict shown for any of the jobs. Yeah, I know. Just indulge me, though. Let's assume that it's just number one, just Marker. Yes, that alone would be substantial evidence supporting the ALJ Step 5 finding. What case is so hold? I cannot think of a case off the top of my head, but the Commissioner's I think the Third Circuit in Rutherford has held that. Are you familiar with that case? I'm not familiar with that case, Your Honor, but the Commissioner's regulations do not require the ALJ to point to three different jobs as a policy matter. The ALJ will typically ask for those jobs, but the only burden of production is to point to jobs existing in significant numbers in the national economy, and that third job alone provides those significant numbers. So while I'm not familiar with the holding at Rutherford, the Commissioner's nationwide regulations still support that argument. So the point is something like harmless error. I mean, if he got it right as to one, but got it wrong as to two and three, so long as one is sufficient, we don't worry too I would phrase it as a substantial evidence issue, and that one job alone is substantial evidence supporting the Step 5 finding. So returning to the Commissioner's first point about the Social Security ruling, as established, it's only a duty to develop. It does not shift the burden of proof to the ALJ at Step 5. It requires the ALJ as part of his duty to develop to ask if there are inconsistencies. The ALJ did that here, and the V.E. testified there were none. And under the persuasive holdings of this Court, that alone is sufficient for this Court to affirm. What's the status of the other circuit courts with respect to this issue? Some of them hold that it's enough simply to ask, as happened here, even though it's not developed. Others require more. Is that correct? Yes. And so, kind of give us a quick rundown of how the circuits go. Sure. I'll maybe stick with Pearson, which is a published Fourth Circuit case that said that where the ALJ asked if there's an inconsistency, and the V.E. testifies there is not, the ALJ has to go further and sort of independently verify that issue. And I think there are several reasons why Pearson was incorrectly decided. So first, under the Fourth Circuit law, the ALJ actually has the burden of proof at Step 5. The Social Security Act says that the claimant has to provide evidence establishing his disability under regulations the Commissioner may issue. The Commissioner's regulations in turn say, claimant, you have the burden of proving your disability. And neither the Act nor the regulations carve out an exception at Step 5. And binding case law in this circuit is that the claimant still has the burden of proof at Step 5. Pearson, I think, also has problematic logic. It claims that an inconsistency can be apparent to an ALJ, even when it's never brought to his attention. Pearson decided on one particular meaning of the term apparent based on its own reading of the Commissioner's policies. But if the Commissioner had intended a specific meaning, the Commissioner could have used that meaning, but did not do so. The sort of practical application of Pearson, I think, is potentially troubling. It requires the ALJ at the hearing where a V.E. gives testimony to essentially disbelieve the V.E., the job expert, say, no, I don't accept your testimony. Then compare every single portion of the RFC with every single job duty identified in the DOT for every single job that the V.E. identified. Apparently, while the V.E. just sits there idle and claimant's counsel also sits there idle. If the ALJ doesn't do this and there's an apparent conflict raised to the court, it's an automatic remand. If the ALJ does do this but doesn't identify the apparent conflict, it's an automatic remand. If something is brought up after the hearing and the ALJ becomes aware of an apparent conflict and doesn't hold a new hearing to get a reasonable explanation from the V.E., it's an automatic remand. In short, the policy behind or the policy effects of Pearson, I think, lead to bad government. Incidentally, in SSR 004P in footnote 1, the commissioner had, you know, pointed out that the Fourth Circuit got it wrong with one of its holdings about V.E. testimony in another context. So Pearson, which is our published case from the Fourth Circuit, if you look at the law, it's based on bad logic, it leads to bad government, and it's from a circuit that's got a bad history in the area. So I think that... Did I understand you to say that the Social Security Administration has affirmatively disavowed that case? Not Pearson, but Fourth Circuit in another case, and that's pointed out... On the same point? On a slightly different point, but testimony. Okay. Okay. I'll briefly address the Jones issue. As I pointed out in my brief, claimant didn't raise it at the district court level, so it's waived on appeal. This court said as recently as last month, it would need to issue an en banc decision to overturn Jones. That's a pretty high procedural bar for an issue that wasn't properly preserved in the first instance. This court has had several opportunities to revisit its holding in Jones since the court has reaffirmed Jones multiple times, and I don't see Jones as per se inconsistent with the SSR based on the facts in this case. Where everyone gets tripped up is the trumps language. Jones says that the VE's testimony does not automatically trump or does automatically trump when there's an inconsistency. DOT says the VE's testimony does not automatically trump. If you look at the mechanics though of what's going on under the SSR, if there is an inconsistency, between the VE's testimony and the DOT, the ALJ just has to ask for a reasonable explanation, and if that's forthcoming, the VE's testimony still trumps the DOT, which in my view is entirely consistent with Jones. Thank you. Very well. Thank you so much. Mr. Steinberg, five minutes. Yes. I'm probably not even going to take up the five minutes. I just want to address the marker job. The courts, no court has stated that a certain number of jobs is a significant number of jobs. They say that's up to the administrative law judge to decide what constitutes a significant number. So one judge may say 10,000 jobs is not significant. Another judge may say 10,000 jobs is significant, and the courts will say that it's up to the administrative law judge to make that determination. How many jobs available in the marker job? You know, when I came here, I didn't realize I was going to be able to bring my laptop. So I don't have that in front of me. But let's assume it's 50,000 or 60,000. You say, well, you know, that's certainly a significant number. Well, it's up to the judge to decide, the judge, the administrative law judge, to decide what is a significant number not up to the courts, because if the court takes that step, then the court could also say another number is not for the administrative law judge to decide. So our position is, is that if the other two jobs are not applicable, then we don't know what the judge would do if the only job available was the marker job. And just, I think it's 264,000 marker jobs. Yeah, and you know, I didn't do the hearing, but I can tell you this, you know, this is going to come up in other cases where you have the Bureau of Labor Statistics that has this thing called the classification of occupations, and they have like 200 jobs in a certain SOC category. And that SOC category might have 260,000 jobs. The vocational expert will take one occupation out of those 200 occupations and say, there's 264,000 jobs nationally. And I'll be seeing you guys on that issue someday soon. But be that as it may, there are not 264,000 marker jobs in the country. That is a ridiculous number. I didn't do the hearing, but that's just not true. I mean, that's like saying that there's a million jobs where people do document preparer. It just doesn't exist. Was that issue challenged below? No, no, it wasn't. But you asked me about 264,000, and I don't know what to tell you about that. I mean, if the case is remanded on the other issues, I certainly would bring it up to the administrative law judge and point out the error in that. I mean, if you look at the case law, you know, look up marker, you'll see that no other vocational expert has said there's 260,000 of them. What about the fact that he has argued that the burden was on you when you were before the administrative law judge, but when your client was, to show the apparent conflict? And it appears that that record has not been established and certainly not even challenging the number of jobs. What I do at the hearing is different from what other attorneys do, but I wasn't the attorney at the lower level. What I would typically do is I have Westlaw in front of me, and I have the Dictionary of Occupational Titles and the Selected Characteristics of Occupations in front of me. And when they testify, I say, well, I'm looking at this job that requires frequent depth perception or constant. The vocational experts say, oh, I'm sorry, I made a mistake. Let me give you another job. But that wasn't done. I understand that you weren't there. You weren't the attorney, but it seems like the burden was not met below because these questions were not asked. Right. Right. But some of the other courts have said that the judge has a concomitant duty to develop the record. So the claimant has the duty, but the judge also has the duty. And let me talk briefly about a sister case that was cited recently, Dawn Baker. That was a supplemental decision. Dawn Baker was not represented. And how would an unrepresented claimant be able to develop the record? So really, we have to address the legal issue of does the judge have a burden under 004P to identify apparent conflicts, or is it sufficient just to ask the vocational expert, does your testimony conflict, and if the vocational expert says no, that's enough? Thank you. Thank you very much. Mr. Steinberg, for what it's worth, next time you said you'll see us again. Great. If you'll make a request of the clerk's office to bring your laptop, we'll typically grant it. Thank you. I appreciate it. You know, I know the case pretty well, but just the numbers, I'm not good with. Thank you.